UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR IMMIGRATION STUDIES**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, <br><br> Defendant. | Case No. 1:22-cv-00117 (TNM) |

## MEMORANDUM OPINION

This FOIA case presents a recurring problem: A broadly worded request that yields a mountain of responsive documents at the cost of herculean efforts from the target agency. The Center for Immigration Studies requested all emails from three high-ranking officials at the U.S. Citizenship and Immigration Services (USCIS) over the course of about nine months. USCIS moves to dismiss the Complaint or for summary judgment, arguing that the burden from such capacious requests is too heavy to require a response.

The Court agrees. Binding precedent in this circuit establishes that an agency need not respond to requests that entail an unduly burdensome effort of review, redaction, and production. The Center's requests would require such an effort. Because the Court consults evidence beyond the Complaint to reach that decision, it will grant summary judgment in the agency's favor.

**I.**

The Center is a Washington-based nonprofit that seeks to educate the public and policymakers "about the social, economic, environmental, security, and fiscal consequences of

legal and illegal immigration" in the United States. Compl. ¶ 3, ECF No. 1 (Compl.). The Center's education efforts often involve FOIA requests. *See id.*

The public has fiercely debated immigration in recent years. Unsurprisingly in such an environment, immigration policy tends to fluctuate between presidential administrations. Indeed, President Biden moved swiftly to reverse or modify several of President Trump's immigration initiatives and policies. *See Am. Ctr. for Law and Just. v. DHS (ACLJ)*, 573 F. Supp. 3d 78, 80 (D.D.C. 2021) (noting these changes).

Concerned about the speed and opacity of these policy changes, the Center submitted three FOIA requests to USCIS. *See* Compl. ¶¶ 5–9. These requests sought "[a]ll records sent or received electronically" since the beginning of the Biden Administration "to the present" by Felicia Carrillo, Amanda Baran, and Ashley Tabaddor. *Id.* These individuals are high-ranking staffers at USCIS: The chief of staff, chief of the Office of Policy and Strategy, and chief counsel respectively. *See* Decl. of Cynthia Munita ¶¶ 5–7, ECF No. 9-2 (Munita Decl.). The requests had no subject matter focus or other limitation.

That worried USCIS which, hoping to narrow the search, asked the Center to clarify if it sought records pertaining to any subjects. *See* Munita Decl. at 8.[1] The Center responded that "the request [was] sufficiently focused," and declined to limit it. *Id.*

USCIS began locating emails in mid-October but quickly learned how many there were. For Carrillo alone, the agency located 937,608 pages of emails comprising 65 gigabytes of data. Munita Decl. ¶ 10. USCIS estimated that it needed one year to review that material. *See id.* at 11. "Due to the sheer size" of that file, USCIS sought again to work with the Center to narrow the request. *Id.* To trim the scope, the agency asked the Center to share the types of information

---

[1] All page citations refer to the page numbers generated by the Court's CM/ECF system.

it sought and specific search terms to locate that information. *Id.* The agency also explained that transferring so much data within USCIS's own network would take a week and that, based on its size, the transfer would probably malfunction. *See id.* Despite these entreaties, the Center did not budge, responding that the request was "reasonable." *Id.* at 10.

Next, USCIS moved to the Baran and Tabaddor requests. For Baran, USCIS found 10.4 gigabytes of emails comprising about 150,017 pages. *See id.* ¶ 14. And the agency found 37.61 gigabytes of Tabaddor's emails, equivalent to 542,515 pages. *See id.* ¶ 13.

This January, the Center sued, arguing that USCIS's failure to produce the documents violated FOIA. *See generally* Compl. The agency moved to dismiss or, in the alternative, for summary judgment and attached declarations about the estimated time needed to respond to the requests as drafted. *See* Mot. to Dismiss or for Summ. J., ECF No. 9 (Mot.). That motion is now ripe for decision. Because USCIS presents and the Court considers evidence outside the pleadings, the Court treats the motion as one for summary judgment. *Accord Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 86 (D.D.C. 2012). The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## II.

Under Rule 56(a), summary judgment is proper if "there is no genuine dispute of any material fact" so that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court credits the nonmoving party's factual allegations and draws all justifiable inferences in his favor in ruling on a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Most FOIA cases resolve on summary judgment. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).

FOIA exposes "agency action to the light of public scrutiny." *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989). The Act requires an agency to release records not otherwise exempt from disclosure when the agency receives a request that "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). And a request "reasonably describes" agency records when it "would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."[2] *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). Agencies must read FOIA requests as drafted, *see Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and "[b]road, sweeping requests lacking specificity are not sufficient," *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).

### III.

### A.

Congress enacted FOIA "to pierce the veil of administrative scrutiny and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (cleaned up). To achieve that end, FOIA includes "a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records[.]" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Put simply, agencies must disclose material upon request unless that material "fall[s] within one of nine enumerated

---

[2] FOIA also requires a request to be "in accordance with" an agency's FOIA regulations. 5 U.S.C. § 552(a)(3)(A). Rules from DHS, USCIS's parent agency, incorporate the Act's "reasonably describes" requirement. *See* 6 C.F.R. § 5.3(b) ("Requesters must describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort."). The Court thus need not analyze whether ACLJ's request violates DHS regulations. If the request violates FOIA's "reasonably describes" requirement, it also violates those regulations. *See Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 60 n.1 (D.D.C. 2013).

exemptions," found in 5 U.S.C. § 552(b).  *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).  Most FOIA cases therefore proceed in a predictable fashion.  A member of the public submits a request; the agency searches for and locates responsive documents; and the agency releases all material in those documents not exempt from disclosure.  One could excuse the casual observer for thinking that FOIA comes down only to the applicability of exemptions.  Most cases do.

But that is not the full FOIA story.  There are additional provisos.  For example, agencies need not create new records in response to a FOIA request.  *See Forsham v. Harris*, 445 U.S. 169, 186 (1980).  They need disclose only the records in their possession.  *See Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982).  More, agencies must respond only to requests that clear certain threshold limitations found in the Act.  *See* 5 U.S.C. 552(a)(3).

*First*, a request must "reasonably describe[]" the records sought.  *Id.* § 552(a)(3)(A).  If the agency reading a request "is able to determine precisely what records are being requested," that request meets the "reasonably describes" requirement.  *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996).  *Second*, a record must be "readily reproducible" in the format requested.  5 U.S.C. § 552(a)(3)(B).  Related to the assumption that FOIA does not require creation of new records, a requester oversteps when it seeks information in a format that the agency does not use or for which the agency lacks the necessary technology.  *See Aguiar v. DEA*, 992 F.3d 1108, 1113 (D.C. Cir. 2021).  And the agency need not take on new technological processes just to respond.  *See Long v. ICE*, 149 F. Supp. 3d 39, 56 (D.D.C. 2015).  *Third*, agencies need only make "reasonable efforts" to search for electronic records.  5 U.S.C. § 552(a)(3)(C).  A search

that "would significantly interfere with the operation of the agency's automated information system[]" is per se unreasonable.  *Id.*

At bottom, these statutory limitations require restraint by requesters.  As Judge Nichols recently noted, "[t]he touchstone is reasonableness."  *Nat'l Student Leg. Def. Network v. Dep't of Ed.*, No. 19-cv-3473 (CJN), 2022 WL 1223707, at *3 (D.D.C. Apr. 26, 2022).  Requesters may not make unreasonable demands of an agency, such as by seeking whatever document they want from whomever and wherever they choose.  Despite its seemingly boundless breadth, FOIA still "protect[s] agencies from undue burdens."  *Inst. for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019).

And rightly so.  As this Court explained in *ACLJ*, FOIA's requester-friendly fee shifting provisions encourage requesters (particularly nonprofit ones) to submit broader and broader requests with taxpayers picking up the tab.  573 F. Supp. 3d 82–83.  These "mismatched incentives" only add burdens on agencies, and requesters often leverage those burdens.  *Id.* at 84.

### B.

The "reasonably describes" requirement found in § 552(a)(3)(A) is relevant here.  The D.C. Circuit has identified three ways in which a request fails that requirement.

*First*, vague words and descriptions.  In general, a request must allow agency staff "to determine precisely which records are being requested."  *Yeager*, 678 F.2d at 326 (cleaned up).  A request that vaguely describes the requested documents does not suffice.  Take the request in *ACLJ*, which sought all documents "referencing or regarding in any way" eight topics about immigration at the southern border.  573 F. Supp. 3d at 85.  An agency could fairly read "regard in any way" to sweep in almost all communications of any relevance or relationship.  *See id.*  For example, an email "about a migrant who might have COVID-19 (but also might not)" could

regard the topic of "the number of migrants with COVID-19." *Id.* Without more specificity, FOIA processors faced with such language stand "in a hopeless muddle without clear guidance about what documents" the requester wanted. *Id.*; *see also CNN v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) (dismissing as "too vague" a request for records that "relate in any way" to memos issued by the FBI Director).

*Second*, seeking difficult to locate records. The D.C. Circuit has long held that when a request entails "an unreasonably burdensome search," the agency need not respond. *See Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978). This analysis depends on whether agency employees can locate responsive records "with a reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36. For example, a request for all records "pertaining to the IBM supercomputer named Watson" would require a search of "every [agency] office for any documents containing the word Watson." *Nat'l Sec. Cnslrs v. CIA*, 969 F.3d 406, 409–10 (D.C. Cir. 2020). Such a "massive undertaking" is unreasonably burdensome. *Id.* at 410; *see also Freedom Watch, Inc. v. NSA*, 220 F. Supp. 3d 40, 44 (D.D.C. 2016) ("Agencies need not turn over every stone[.]").

Consider *ACLJ* again. That request sought documents from the DHS Secretary or his "aides, staff, representatives, or agents." 573 F. Supp. 3d at 81. Read fairly, those terms encompass every DHS employee. *See id.* at 86. A responsive search thus required a search of communications from "any and all employees" at multiple agencies. *Id.* at 87. That search would likewise be unreasonable.

*Third*, overly burdensome post-search efforts. Consider *American Federation of Government Employees v. Department of Commerce* (*AFGE*), in which a labor union requested documents about the Census Bureau's promotion policies. 907 F.2d 203, 205 (D.C. Cir. 1990). The requests were broadly worded—the union sought inspection of "every chronological office

file and correspondence file" and of "every division or staff administrative office file in the Bureau which record[ed], catalogue[d], or store[d]" promotion memos. *Id.* The Circuit held that the requests "impose[d] an unreasonable burden upon the agency," despite describing "the documents requested with sufficient precision to enable the agency to identify them." *Id.* at 209. Despite this precision, the requests "require[d] the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Id.* When faced with such an effort, the Circuit thought it "clear" that the requests imposed an unreasonable burden. *Id.*

The Circuit also noted that any unreasonableness was "only more obvious" when viewed in relation to the union's purpose behind the requests. *Id.* The union never tailored the requests to those records "tied to [its] expressed concern with promotion-related materials." *Id.* The union instead sought review of "every file in which" relevant records "[could] be found." *Id.* That asked for too much from the agency.

Note the Circuit's reasoning. Even when a request reasonably describes documents, the attendant burden of production can be so heavy that the agency need not respond. *Accord Brown v. WMATA*, No. 19-cv-2853 (BAH), 2020 WL 806197, at *9 (D.D.C., Feb. 18, 2020). So as recognized in *AFGE*, the post-search burden matters to the reasonableness of a FOIA request.

More, *AFGE* stated the by now common principle that "FOIA does not provide requesters with a right to demand an all-encompassing fishing expedition of files in every office within an agency." *Cause of Action Inst. v. IRS*, 253 F. Supp. 3d 149, 160 (D.D.C. 2017) (cleaned up). This makes sense. Agencies respond to FOIA requests at taxpayer expense, and burdensome requests hinder an agency's ability to respond to other FOIA requests and to conduct its other statutory responsibilities. An agency should not need to spend so much time on

one request (or multiple related requests from one requester) at the expense of its more critical duties.

### IV.

The requests here fail the D.C. Circuit's third requirement. USCIS has collected over 1.6 million pages of responsive records. These pages comprise all emails from January 1, 2021, to mid-October of the same year. The agency estimates that it needs 8,151 hours to process so much material. *See* Munita Decl. ¶ 15. That equates to about 1,018 workdays—about two years and nine months. *See id.* USCIS argues that the burden suggested by these numbers is too heavy and renders the requests "invalid." Mot. at 13.

To begin, the Center questions those numbers. It submitted the requests in June 2021 seeking emails from January 1, 2021, to "the present." Compl. ¶¶ 5–10. The Center reads that language as seeking only "four months" of material, not the nine months' worth that USCIS located. Opp'n to Mot. at 2, 3, ECF No. 10 (Opp'n). Circuit precedent says otherwise. The temporal scope of an open-ended request ends at the agency's first search, *see McClanahan v. DOJ*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016), which occurred here in mid-October, *see* Munita Decl. ¶ 10. So nine months is the applicable time under that precedent. The Court therefore accepts the agency's numbers for responsive pages and analyzes the burden stemming from those numbers.

Which brings us to the heaviness of that burden. USCIS first argues that, based solely on the years needed for processing, the burden is too heavy. *See* Mot. at 13. The Court ultimately agrees, but not because the agency invokes some talismanic number of hours, months, or years. To be sure, USCIS's estimates exceed what other judges in this district have considered unreasonable. *See Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275–77 (D.D.C. 2014) (upholding

agency's refusal to produce records when redaction process "would take more than 8,000 hours"). And the Court credits USCIS's representation that, based on the high positions of the three officials, it will have to review all their emails closely for redactions under multiple FOIA exemptions. *See* Munita Decl. ¶ 16. Taking that into account, the agency's current estimates likely understate the time needed to produce all records.

But burdensomeness does not boil down to a simple game of numbers. Agencies often take multiple years to produce responsive records. *See, e.g.*, *Judicial Watch, Inc. v. DOJ*, No. 16-cv-475 (TNM) (D.D.C., filed Mar. 10, 2016) (FOIA request submitted in 2014, but production is ongoing). Sometimes, they take decades. *See, e.g.*, *McGehee v. DOJ*, 362 F. Supp. 3d 14, 16 (D.D.C. 2019) (resolving FOIA dispute that started with a request twenty years prior). In such cases, the responding agency presumably requires more post-search hours than USCIS will accrue here. That said, none of the agencies in those cases argued, as USCIS does, that the post-search effort was too burdensome. They thus do not necessarily bless large requests as proper. But considering those examples, the Court hesitates to say that a certain number of hours *by itself* renders a post-search burden unreasonable. That number is relevant but not necessarily dispositive. *See Kwoka v. IRS*, No. 17-cv-1157 (DLF), 2018 WL 4681000, at *5 (D.D.C. Sep. 28, 2018) (concluding that 2,200 hours of post-search work is reasonable).

Here, however, the burden is too high. Not only will USCIS need thousands of hours, but that effort is "largely unnecessary to [the Center's] purpose." *AFGE*, 907 F.2d at 209. Although the Center worries about the Biden Administration's "drastic and abrupt policy shift[s]," it has not tailored its requests to emails related to a particular policy or policies. Opp'n at 1. Instead, it seeks nine months of all emails from three high ranking bureaucrats. The agency thus will process thousands of documents with no conceivable relation to the policies in which the Center

proclaims an interest. Workplace emails include conversations between coworkers about miscellaneous topics and missives from the employer about topics unrelated to official business, like canned food drives and health care plans. The Center's requests sweep in all those communications, despite their irrelevance to immigration, forcing the agency into years of work. That burden is "more obvious[ly]" unreasonable given this mismatch between the material that the Center says it wants and the material that the Center's requests will force USCIS to review. *AFGE*, 907 F.2d at 209.

More, the agency told the Center that the transfer of Carrillo's records "within USCIS's network" could "severely degrade [IT staff's] normal business workload." Munita Decl. ¶ 11. USCIS also predicted a "real possibility" that the transfer of such a large file "could fail[,] requiring the process to be started all over again." *Id.* The Center never disputed those assertions. This danger underlines the unreasonableness of the search being requested here. *Cf.* 5 U.S.C. § 552(a)(3)(C) (excusing agencies from searching for records "when such efforts would significantly interfere with the operation of the agency's automated information system"); *accord Schladetsch v. HUD*, No. 99-cv-0175, 2000 WL 33372125, at *5 (D.D.C. Apr. 4, 2000) (analyzing under § 552(a)(3)(C) "the extent to which the processing of [a] request would actually interfere with the operations of [the agency's] computer system").

The Center responds that USCIS reads the requests too broadly. According to the Center, a "reasonable interpretation" would encompass only those emails "that the official was specifically involved in," not mass emails to many employees. Opp'n at 4. Perhaps, but the agency (and the Court) reads the requests as drafted, not as the Center "might wish [they were] drafted." *Miller*, 730 F.2d at 777. They seek "all electronic records sent or received by" the three staffers. Compl. ¶¶ 5–10. Nothing more. That language on its face admits no carveouts or

11

exceptions—it wants "all" emails, regardless of their subject matter or number of recipients. *Id.* An alternative reading is simply unreasonable given the language's stark capaciousness.[3]

Indeed, the Center could have avoided this outcome—and lessened the agency's post-search burden—through different language. It could have sought emails from the same timeframe but only ones about specific immigration policies. And if the Center desired a snapshot for all emails involving these officials regardless of subject, why not seek a shorter timeframe? Although a request for emails from a short window of time would sweep in lots of irrelevant communications, the mismatch between the Center's purpose and the post-search burden would be less stark. Even if those requests yielded many documents, the post-search burden at least would be lighter.

The Center justifies its requests with a host of policy arguments, including that the Biden Administration has made its immigration decisions in secret. *See* Opp'n at 7–8. The Court cannot credit those assertions as reason to enforce the requests as drafted. If the Center wanted records about certain immigration policies, a request for emails about those subjects would impose a more manageable post-search burden on USCIS. *Accord* Reply at 4. But the language of these requests requires a burden that, by dint of the hours required and its needlessness, is too high to require a response from USCIS.[4]

## V.

FOIA is an important tool for transparency and accountability, but it is not a blank check. The Act still includes some "limits aimed at protecting agencies from undue burdens." *Inst. for*

---

[3] The Center also could have offered this interpretation when USCIS repeatedly asked it to narrow the request.

[4] Because the Court agrees with USCIS's argument on the heaviness of the post-search burden, it need not address the agency's other argument that the requests are "overly broad" in their descriptions. Mot. at 10.

*Just.*, 941 F.3d at 570. As drafted, the Center's requests would force USCIS to review and produce millions of pages. And because the Center seeks office emails, many of those pages will discuss nothing of import to immigration, the Center's alleged concern. The Court establishes no bright line rules about when a request seeks too many irrelevant records as to be unduly burdensome. It merely follows *AFGE* to find that in this case, the juice is not worth the squeeze. Because the Center's requests require an unduly burdensome post-search effort, the Court will grant the agency's motion for summary judgment. A separate Order will issue.

Dated: September 16, 2022                                          TREVOR N. McFADDEN, U.S.D.J.